## THE CUMBERLAND COAL COMPANY *a.* SHERMAN.

*Supreme Court, First District; Special Term,\* December,* 1858.

FOREIGN CORPORATION.—JURISDICTION.—SERVICE OF PROCESS.

In an action against a foreign corporation, it must appear, in order to give the court jurisdiction, either that the cause of action arose, or the subject of the action is situated within this State, or that the plaintiff is a resident of this State, and the defendant has property within it.

*It seems,* that if the cause of action arose, or the subject of the action is situated within this State, the question of the defendants having property becomes immaterial whether the plaintiff is a resident or not.

The act of 1855 (*Laws of* 1855, ch. 279), requiring foreign corporations doing business within this State, to designate a person to receive service of process, merely facilitates the service in the class of cases of which the court already had jurisdiction. It does not operate to give the court jurisdiction of cases not included in sections 134 and 427 of the Code.

Of determining the place where the cause of action arose.

Motion to set aside summons, complaint, and all proceedings for want of jurisdiction.

The facts are stated in the opinion.

SUTHERLAND, J.—This action was commenced by the service of a summons and complaint on the defendants Sherman and Dean personally, and upon the president and one of the directors of the Hoffman Steam Coal Company, in the city of New York. The plaintiff and the defendants—the Hoffman Company—are both foreign corporations, organized under the laws of, and in the State of Maryland. Since the commencement of the action, S. Brook Postly has been made a party defendant by supplemental complaint. The defendants Sherman, Dean, and Postly are, and were, when the action was commenced, all residents of the State of New York, and Postly was and is the president of the Hoffman Company. No attachment was issued in the action when the same was commenced, or has been since.

---

\* Affirmed on appeal, at May general term.

The Hoffman Company has not appeared generally in the action, or answered or demurred, but appears, specially, for the mere purpose of making this motion. The motion is on the part of the Hoffman Company for an order setting aside the summons, complaint, and all subsequent proceedings in the action on the grounds:

*First.* That the Hoffman Company has not been lawfully served with the summons or complaint, and has not appeared in the action.

*Second.* Because the plaintiff and the Hoffman Company are both non-residents of this State; and the cause of action did not arise, and the subject-matter of the action is not situate in this State.

*Third.* Because the said Hoffman Steam Coal Company has no property within this State.

The motion is made on the summons and complaint, and an affidavit of the defendant Postly. I do not deem the question of property, in this State, a question of any importance on this motion. If the question of the regularity of the service of the summons, or of the jurisdiction of the court as to the Hoffman Company in this action, depended upon the question of property in this State, I could hardly say that it appears from the papers before me, that the Hoffman Company had property in this State when the action was commenced, or has had any in the State since.

The complaint, which is verified by Mr. Palmer, the vice-president, and a director of the plaintiff, alleges, on *information and belief*, that the Hoffman Company has coal and credits for the proceeds of coal, and property in the city of New York.

The defendant Postly, in his affidavit, states that he is, and has been since its organization, the president of the Hoffman Company, and has been and is well acquainted with all its business affairs and transactions, and its property, and the situation thereof, and that, to his knowledge or belief, the said company has not and had not, when the summons and complaint in this action were delivered to him, any property or coal, or credits for the proceeds of coal, in this State. In reply to this, the affidavit of Mr. Palmer, read on the motion by plaintiff, states facts and circumstances merely, which would make it probable that the

Hoffman Company had or has property or coal in New York; that the Hoffman Company are or have been working its mines in Maryland, and transporting coal therefrom, destined for New York, &c. But, as I have said, I do not think this question of property in New York of the least importance on this motion. By section 134 of the Code, in a suit against a corporation, the summons shall be served by delivering a copy thereof to the president, or other head of the corporation, secretary, cashier, treasurer, a director, or managing agent thereof—but, by this section, such service can be made, in respect to a *foreign* corporation, only when it has property within this State, or *the cause of action* arose therein. By section 427 of the Code, an action against a foreign corporation may be brought in the Supreme Court, the Superior Court of the city of New York, or the Court of Common Pleas for the city and county of New York:

1. By a resident of this State for any cause of action.

2. By a plaintiff not a resident of this State, when the cause of action shall have arisen, or the subject of the action shall be situated within this State.

In an action against a foreign corporation, the regularity of the service under section 134, and whether the court in which the action is brought has jurisdiction of the cause or subject-matter of the action under section 427, are both jurisdictional questions, without a voluntary appearance on the part of the defendant. In such an action the court must not only have jurisdiction of the cause or subject of the action under section 427, but the service must be on an officer or agent of the foreign corporation according to section 134, and in a case in which such service is allowed by that section. The Code has done away with the theory and practice of formally entering the defendant's appearance for him; but proof of service of the summons in the manner prescribed by the Code, substituted for such appearance, is necessary, without voluntary appearance, to give the court jurisdiction.

By the act passed April 10, 1855, foreign corporations doing business in this State are required, within a certain number of days, to designate some one, in each county where such corporation transacts business, on whom process may be served, and to file such designation in the office of the Secretary of

State. By the act, in all cases where such designation shall not be made, and such foreign corporation cannot be served with such process, according to the then provisions of law, it shall be lawful to serve such process on any person found in this State acting as the agent of said corporation, or doing business for them. The act declares that a summons shall be held to be a process, &c.

It is presumed that this act does not extend or enlarge the jurisdiction of this court as to actions against foreign corporations, under sections 134 and 437 of the Code. It was intended evidently, merely to increase the facilities of serving summonses, &c., against foreign corporations, in the cases allowed by section 134, and of which the court has jurisdiction by section 427.

The summons and complaint in this case were served on Postly as the president of the Hoffman Company, and on one of its directors in the city of New York. As it respects the person or officer on whom service was to be made, the service in this case was regular under section 134.

I do not see that the act of 1855 in any way affects the question of the regularity of service, or of jurisdiction in this case.

The service of the summons in this case was regular, and allowed by section 134, if the Hoffman Company had property in this State, or the cause of action arose therein, although the plaintiff is a foreign corporation. Section 134 makes no distinction between actions by resident and actions by non-resident plaintiffs.

But, by section 427, the plaintiff being a foreign corporation, this court has no jurisdiction over this action as to the Hoffman Company, also a foreign corporation, unless the cause of action arose in this State, or the subject of the action is situated within this State. Both being foreign corporations, it follows from these two sections of the Code that the court has no jurisdiction in this case as to the Hoffman Company, unless the cause of action as to it arose in this State, or the subject-matter of the action is situated therein, although the Hoffman Company had property in this State at the time of the commencement of the action ; but that the court has jurisdiction, if the cause of action arose in this State, although the Hoffman Company had no property in this State at the time of the commencement of the

action. If the cause of action arose in this State, the question of property in this State is not a jurisdictional question, under either section 134 or section 427 of the Code, whether the plaintiff be a resident or non-resident of the State. What is said in Hulbert *a.* Hope Mutual Insurance Company (4 *How. Pr. R.*, 275); Brewster *a.* Michigan Central Railroad Company (5 *Ib.*, 183); Bates *a.* New Orleans, Jackson & Great North Railroad Company (13 *Ib.*, 415, S. C., 4 *Abbotts' Pr. R.*, 72), as to an action against a foreign corporation, being merely an action or proceeding against its property in this State, and the judgment in such action, a judgment merely *in rem*, was not called for by those cases, and would, it appears to me, be very apt to mislead. A much more correct view of these actions against foreign corporations, and of the provisions of the Code relative thereto, was, I think, taken by Judge Hand in President and Directors of Bank of Commerce *a.* The Rutland and Washington Railroad Company (10 *How. Pr. R.*, 1).

I see no reason why private foreign corporations should not be tried in the courts of this State, as well as non-resident natural persons, or why a judgment obtained against a foreign corporation by service of summons under section 134 of the Code, or by publication under section 135, in an action of which the court has jurisdiction by section 427, should not have the same force and effect as a judgment against a non-resident natural person or individual. The Code makes no distinction as to the manner and effect of entering a judgment in the two cases.

If the action against a foreign corporation is for the recovery of money, the plaintiff, by section 227 of the Code, may, at the time of issuing the summons, or *at any time afterwards*, have the property of the defendant in this State attached; but there is nothing in the Code which makes the issuing the attachment or the fact of there being property of the defendant in the State, jurisdictional facts, if the cause of action arose in the State. If the cause of action did not arise in this State, and the plaintiff is a resident of this State, the regularity of the service of the summons, under section 134, or of publication under section 135, depends on the question of property in this State; and so far, and in such case, the question of property in this State may be a jurisdictional question.

It is true, in one sense, all judgments against corporations, are judgments *in rem.* They cannot very well be judgments *in personam;* for corporations have no persons. They are immaterial creatures of the law; and all their rights and liabilities come from law. They have no natural rights; for nature never made a corporation.

Judgments against them can only affect their property or chartered rights. Judgments obtained in the courts of this State cannot directly reach persons or property in other States; but why should not the property of a foreign corporation brought into this State be seized by execution as well as by attachment? and why should not a party have a right to obtain a judgment against a foreign corporation in anticipation of property of the corporation coming into this State? Judgments obtained in the courts of this State, can only operate directly on persons or things within the jurisdiction of the State; but so far as it respects the force and effect of such judgments *within this State;* the mode or manner of obtaining such judgments; upon what previous service or notice to the defendant or defendants they may be obtained; the regularity of the proceedings to obtain them, and their regularity when obtained, are all questions for the authorities and courts of this State.

When sought to be used out of this State, in other States, as evidences of debt, or otherwise, their force and effect depends upon the constitution of the United States, and comity of those States; and their courts have a right to adjudicate upon their force and effect under the constitution of the United States and their State regulations. (See Moulin *a.* Insurance Company, 4 *Zabr.,* 223.)

Sufficient has been said, I think, to show that the only question in this case, on this motion, is whether plaintiff's cause of action as to the Hoffman Company arose within this State.

I do not say any thing on the subject of the action as distinguished from the cause of action (if it is to be distinguished), for in examining the question as to where the cause of action arose, it will be perfectly evident that, as distinguished from the cause of action, the subject of the suit is in Maryland; or, at all events, that if any part of the subject of the action as to the Hoffman Company is in New York, that the cause of action

as to that part of the subject of the action arose in New York.

What, then, is the plaintiff's case, and where did the cause of action as to it arise? The complaint alleges that the plaintiff was possessed of certain lands and of a railroad interest in Maryland; that the defendant Sherman was one of the directors of the plaintiff; that while such director he fraudulently procured from the plaintiff to himself and the defendant Dean, a deed of a certain portion of these coal lands (the complaint stating various facts and circumstances to show the fraud), and that he also fraudulently procured the execution by the plaintiff to and with himself and Dean, of a certain contract for the transportation of coals, which might be taken from the coal lands so conveyed to Sherman and Dean, over the railroad of plaintiff; that the purchase of coal lands by Sherman and Dean was made without the payment of any money, and that the rates of freight specified in the contract for the transportation of coals were not sufficient to indemnify the plaintiff against the actual cost of transportation; that Sherman was enabled to, and did accomplish his purposes of fraud, by fraudulent collusion with the president, by misrepresentations to the directors, and by an abuse of the trusts confided in him as a director of plaintiff, and as chairman of a committee appointed at his instigation to negotiate for the sale of the lands in question; that the deed and transportation contract were executed in New York city, where the board of directors of the plaintiff met, and all the frauds committed there; that afterwards Sherman, Postly, and certain persons of Baltimore, Maryland, organized under the laws of Maryland, the incorporation by the name of "The Hoffman Steam Coal Company of Alleghany," which is made a defendant in this action; that Sherman and Postly are two of the five directors of that company, the other three being residents of Baltimore; that on or about the 20th of August, 1858, Sherman and Dean executed and delivered to the said Hoffman Company a deed of the lands so conveyed to the plaintiff, and have assigned, or are about to assign, by the Hoffman Company, the transportation contract made with them by plaintiff; that the Hoffman Company had full notice, before the conveyance and assignment to them, of all the frauds by which the deed and transportation contract to and with Sherman and Dean had been procured of plaintiff; that

Sherman and Dean mined and took from the lands so conveyed to them about 21,000 tuns before May 1, 1857, about 26,000 tuns between that time and May 1, 1858, and about 32,000 tuns between May 1, 1858, and August 1, 1858, and since the last-mentioned day had taken directly, or through the Hoffman Company, about 15,000 tons; and that the Hoffman Company are continually removing coals from the land, and converting the same to their own benefit.

The original complaint alleges that all the deeds and papers, the deed to Sherman and Dean, the deed to the Hoffman Company, the transportation contract, and the assignment thereof, are in the possession, custody, and control of Sherman. The supplemental complaint, making Postly a party defendant, alleges that he, as president, is entitled to the possession of these papers, and that he has the possession or custody of the transportation contract, and of an assignment thereof, or contract in relation thereto, by Sherman and Dean, under which the Hoffman Company claim the right, and have exercised and are exercising the right to transport coals under and by virtue of the transportation contract.

It appears from a certified copy of the deed to the Hoffman Company, taken from the land records of Alleghany county, Maryland, that the deed is dated August 20, 1858, was acknowledged before a justice of the peace at Baltimore, the same day, and was recorded on the 21st August, 1858, at the request of the Hoffman Company.

There are other allegations in the complaint, charging Sherman with various misapplications and appropriations of the plaintiff's funds to his own use, and calling upon him to account for the same, which I would not undertake to say would have any bearing on the cause of action against the Hoffman Company, if the coal lands were in this State and all the parties resident of this State.

It also appears from the deed to the Hoffman Company, and the complaint alleges, that the consideration of that deed was the issuing to Sherman and Dean of certificates for a large number of shares of the Hoffman Company stock; and the complaint alleges that Sherman, Dean, and Postly are the holders of said stock. The complaint asks for a temporary injunction restraining Sherman, Dean, and the Hoffman Company, and

The Cumberland Coal Company *a.* Sherman.

each of them, from selling, or conveying, or encumbering the lands; from mining or taking any coal therefrom; from carrying away, selling, or transporting any coal, the product of the mines; and from in any manner using or interfering with the said lands, or with the coal or other product thereof; and from assigning or parting with the transportation contract or rights under the same; and from instituting any action or proceeding in any court, for the purpose of enforcing the said contract or any rights claimed under the same.

As final relief, the complaint asks that the transportation contract, and all assignments thereof, or of any rights under it, to the Hoffman Company by Sherman and Dean, be adjudged fraudulent and void, and be decreed to be delivered up to be cancelled; and that the sale and deed to Sherman and Dean by plaintiff, and the deed by Sherman and Dean to the Hoffman Company, be adjudged to be fraudulent; and that a reconveyance thereof by the Hoffman Company be decreed; and that the defendants, and each of them, be decreed to account for the coal they have taken from the lands, and the proceeds which they have respectively received, and to pay the same, as well as other rents and profits of the premises, to the plaintiff.

The original complaint also asks that Sherman and Dean, and the supplemental complaint that Postly, be decreed to assign and deliver to the plaintiff all the shares of stock in the Hoffman Company which they have received, hold, or are entitled to, and all rights and interests in the said stock or company which they have acquired as the consideration in whole or in part of the said lands.

Now, what is the cause of action in this complaint against the Hoffman Company? When and where did it arise? And can this court give the plaintiff the relief asked for as against that company?

The complaint implies a wrong—a breach of duty—done or supposed by the Hoffman Company to the injury of the plaintiff, for which the relief asked, if obtained, will be a remedy.

The cause of action is the right to that remedy, and that right accrued, and the cause of action arose, when and where the wrong or breach of duty was done or suffered. For one to claim and exercise rights of ownership and profit, under a deed

or instrument fraudulently procured, against the true owner, is a wrong, for which the law gives a remedy; and the grantee of such claimant, with a knowledge of the fraud, who claims and exercises the like acts of ownership and profits against the true owner, also commits a wrong. It is his duty to give up the property and all his claims to the true owner. But such wrong is committed and such breach of duty suffered, when and where the claim is wrongfully made, and the rights of ownership are wrongfully exercised against the real owner.

In this case, it appears that the deed to the Hoffman Company was executed in Maryland, was acknowledged and recorded there; the land is there, and all claims of ownership and acts of ownership and profit by the Hoffman Steam Company under it, or the transportation contract stated in the complaint, were and must have been made and exercised in Maryland; the Hoffman Company is a corporation of that State. It is plain, I think, that the plaintiff's cause or causes of action as to the Hoffman Company did arise, and must have arisen in that State. Unless the deed of the Hoffman Company is fraudulent and void, and judicially declared to be so, the plaintiff is not entitled to an account from the Hoffman Company for the rents and profits and proceeds of the coal lands. The latter claim is dependent upon the right to have the deed cancelled, and to a reconveyance.

Unless the cause of action as to the Hoffman Company arose in this State, it cannot be made a party to the action by section 427 of the Code; and having no property in this State, it cannot be made a party by a service under section 134, or under the act of 1855; and unless the Hoffman Company is a party, how can the court grant the relief asked against it—that it reconvey the lands, &c.

Sherman and Postly are personally within the jurisdiction of the court, and if they or either of them have the possession of the papers asked to be cancelled, this court has power probably to compel them to deliver up the papers to be cancelled, but a decree to that effect, or such cancellation, or a decree as to any other part of the relief asked against the Hoffman Company would not affect it, unless a party to the action. The action as to the Hoffman Company proceeds *in rem* against the Hoffman Company for real estate in Maryland, for acts and wrongs done

and suffered in Maryland, in relation thereto, and under the transportation contract.

The main relief, which the plaintiff does not ask for in this complaint, but which the plaintiff requires—to wit, restoration of the possession of the real estate—must be had in the courts, or through the authorities of Maryland; and it may well be doubted whether much of the relief asked in the complaint against the Hoffman Company is not incident to, or can be separated from, an action for such possession.

Upon the whole, I think the summons, complaint, and all subsequent proceedings in this action, should be set aside as to the Hoffman Company. The plaintiff to have leave to amend the summons and complaint, and proceed against the other defendants within the jurisdiction of this court, as the plaintiff may be advised.

If there were reasonable grounds for doubt on this question of jurisdiction, I should deny the motion, and leave the Hoffman Company to raise the question by their motion, as well as by demurrer or answer.

All the cases assume such right. In addition to cases before cited, see Western Bank *a.* City Bank of Columbus (7 *How. Pr. R.*, 238).

---

## SALTERS *a.* GENIN.

*New York Superior Court; Special Term, May,* 1859.

### AMENDMENT.—LACHES.—COSTS.

In an action in which the complaint alleged as the cause of action, that the plaintiff employed the defendants, who were brokers, to purchase on credit certain stock, and as security on his part for the payment deposited with them other stocks; that they falsely pretended that they made the purchase, and he not making payment, they pretended to resell the stock, and also sold or pretended to have sold the stocks which he had deposited with them, to make up the